By the conveyance from Dederer, in 1836, the Hudson and Delaware Railroad Company took a fee in the premises in question. Such is the legal effect of the language of the deed, and there is nothing in the objects for which the company was incorporated to restrict its meaning. As the learned judge, who delivered the opinion of the supreme court, has well remarked, there is no necessary connection between the period of enjoyment or user and the quantity of the estate. A fee may be as necessary to the absolute control of their track, and for the erection of bridges and other permanent fixtures, where the corporation is to continue for fifty years, as where its charter is perpetual. The fee was qualified in this case by a condition subsequent; the grant was upon the express condition that the railroad should be constructed by the corporation within the time prescribed in the act of incorporation *Page 136 
The construction of the road implied a right to enter and appropriate the land granted for that purpose; because, in no other way could the condition be performed. The permission to survey and lay out the track amounted to nothing, without the right to construct, which implied not merely a right to enter, but to use the necessary materials there found; to lay down the rails; in a word, the right to the exclusive and permanent possession and ownership of the soil.
The next question is, has there been a breach of the condition; and if so, can the grantees of Dederer claim the benefit of it? The condition is, that the "said road should be constructed by the Hudson and Delaware Company within the times prescribed in the act of incorporation." It is claimed that this act is private, and one of which we cannot take judicial notice; and from aught that appears on the face of the special verdict, the time limited for the construction may not yet have elapsed. The objection is technical, and is answered: first, by the grant from Dederer, which refers to and admits an act of incorporation. Under this grant the defendants, the Erie Railroad, claim title exclusively; secondly, the jury expressly find that the conveyance, by the Delaware and Hudson Company to the defendants, was under and in pursuance of an act authorizing the New-York and Erie Railroad Company to construct a branch, terminating at the village of Newburgh and authorizing, among other things, a conveyance of all the rights, privileges, immunities and improvements of the Hudson and Delaware Company, whether acquired be virtue of their original act of incorporation or under any act amending the same. As the act stated in the special verdict refers, by way of recital, to and adopts the original act incorporating the Hudson and Delaware Company, to existence of that statute, even if a private one, is sufficient established, and its provisions may be considered as form of a part of the verdict, so far as they may be necessary to *Page 137 
determination of the rights of these parties. The act of incorporation thus referred to was passed April 21, 1835 (Lawsof 1835, 110), and provides that the corporation should, within two years from the date of that act, commence, and in ten years thereafter finish and put in operation, a single or double track of such road from the village of Newburgh to the Delaware river. The verdict states that "the company commenced the construction of the railroad on the 27th of October, 1836, but never finished or put in operation their single or double track, or any part thereof." If the company had ten years from the date of their charter, or, if the work should be commenced within two years, ten years from that commencement within which to complete the road, which is the most that can be claimed, the longest period would expire in October, 1846. The suit was commenced in February, 1847. The condition in the conveyance of Dederer was therefore never performed by the Hudson and Delaware Company, and we cannot assume a performance by the New-York and Erie Railroad Company, because no such fact is found by the verdict, but the contrary. A breach, consequently, is established.
The grantor and his heirs, therefore, could enter upon the premises for the non-performance of the condition; and the remaining question is, did that right enure to the benefit of the plaintiff, who claims, under the original owner, by deed subsequent to the conveyance to the corporation and prior to the breach of the condition? The deed last mentioned was executed on the first of April, 1844, and conveyed the entire farm, of which the premises in question were a part, in fee, "subject only to such right as the Hudson and Delaware Company then had to any portion thereof sufficient for the track of their road."
At the time of this conveyance, Dederer had the mere right to reclaim the premises for the non-performance of the condition. That such a right was not the subject of conveyance at the common law, is fully established by the *Page 138 
authorities referred to by the supreme court, and those quoted by Judge Ruggles in the case of De Peyster v. Michael, 2Selden, 506, 507. But it is urged that the court below overlooked a provision of the Revised Statutes defining estates in expectancy, and declaring them "descendible, devisable and alienable, in the same manner as estates in possession." (1R.S., 726, § 35.) A future estate is defined to be an estate limited to commence in possession at a future day, and a reversion to be the residue of an estate left in the grantor or his heirs, commencing in possession on the determination of a particular estate granted. (§§ 10, 12.) The right of Dederer was not a reversion, for he had parted with the fee. No remainder could have been limited upon a conditional fee by the common law, for the very conclusive reason that the first grantee took the whole estate, and there was nothing that was the subject of limitation. The definition contained in the 10th section was not intended to create any new estate, unknown to the law as then existing, but to apply the same principles to all classes of expectant estates. Hence, the revisers, in their note to the 10th section, say: "In conformity with our plan, and with a view to subsequent provisions, the definition in this section is so framed as to comprehend every species of expectant estates created by the act of the party, remainders, strictly so called, future uses and executory devises." The words by "lapse of time or otherwise," they add, are necessary to provide for contingent limitations operating to abridge or defeat the prior estate; and the other variations from the ordinary definition of a remainder, are introduced to embrace estates in futuro, as they are technically termed. This is all very intelligible, but is very far from avowing a design to declare every contingency, by which an estate might possibly be determined, a conditional limitation; or that a right, to arise upon a forfeiture by which an estate might be avoided, was itself an estate, either with or without a condition. *Page 139 
A right of this sort, depending upon the non-performance of a condition by the grantee, was not an estate in the lands to which the condition pertained, either at the common law or by the Revised Statutes. Accordingly, in De Peyster v. Michael,
above referred to, we hold that the right of reëntry, for the non-payment of rent or the non-performance of other covenants, is not such an interest in the estate as would uphold the condition in that case; that it was not a reversion nor the possibility of a reversion, nor any estate in the land. It was a mere right in action, and if enforced, the grantor would be in by forfeiture of a condition and not by a reverter. (Id., 506.) The learned editor of Kent's Commentaries, in a note, after referring to the definition of future estates given in the 10th section of the Revised Statutes, and to the 35th section above quoted, remarks, that "this sweeping provision would seem to embrace every executory and contingent interest." (4 Kent, 7th ed., 271,n.a.) If by this is meant that every executory and contingent interest, in the language of the 10th section "limited" to commence in possession at a future day, is alienable, the remark may be correct. The word interest would merely be substituted for "estate," the term adopted in the statute. If, however, it is to be understood as intimating that a naked possibility, not arising from a limitation in a deed or devise, as of a son inheriting the estate of his father living at the time of the grant, is alienable, the doctrine is not, I apprehend, supported by anything in the statute upon which he is commenting.
The distinction between a limitation and a condition is stated in the Commentaries of Chancellor Kent. The first determines the estate when the period of limitation arrives, without entry or claim. A condition does not, however, defeat the estate until entry by the grantor or his heirs, and upon entry, the grantor is in as of his former estate. (Kent's Com., 131, vol. 4, 7thed.) When men of the high standing of the revisers introduced the legal term "limitation" *Page 140 
into their definition of a future estate, there is every presumption that they used it in its ordinary legal sense, and in this sense it certainly does not include a condition subsequent.
Upon the whole, I am of opinion that the law is not changed by our statute so as to affect the rights of these parties; that the decision of the supreme court was correct, and that the judgment should be affirmed.
Judgment accordingly.